IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:13-CV-18-D

WILLIAM C. STILLWAGON,         )
                                )
                    Plaintiff,  )
                                )
        v.                      )           **ORDER**
                                )
INNSBROOK GOLF & MARINA, LLC,   )
et al.,                         )
                                )
                    Defendants. )

On May 4, 2012, William C. Stillwagon ("Stillwagon" or "plaintiff") filed a second amended complaint against Innsbrook Golf & Marina, LLC, also known as Innsbrook Golf & Boat, LLC ("Innsbrook"), Rial Corporation ("Rial"), Richard Rieder, and Alois Rieder (collectively "defendants"), alleging breach of a written contract (count one) or, alternatively, breach of an oral contract (count two) [D.E. 47]. On October 4, 2013, defendants moved for partial summary judgment on count one [D.E. 104]. On July 14, 2014, defendants moved for partial summary judgment on count two [D.E. 156]. On August 29, 2014, this court granted defendants' motion for partial summary judgment on count one [D.E. 169]. As explained below, the court now grants defendants' motion for partial summary judgment on count two. The court also denies plaintiff's motion for reconsideration concerning count one and denies plaintiff's motion to amend the order for partial summary judgment concerning count one in order to permit an interlocutory appeal.

I.

The court briefly recites the relevant facts. For more detail, see Stillwagon v. Innsbrook Golf & Marina, LLC, No. 2:11-CV-1338, 2013 WL 1180312, at *1–4 (W.D. Penn. Mar. 20, 2013)

(unpublished) ("Stillwagon I"), and Stillwagon v. Innsbrook Golf & Marina, LLC, No. 2:13-CV-18-D, 2014 WL 4272766, at *1–3 (E.D.N.C. Aug. 29, 2014) (unpublished) ("Stillwagon II").

Stillwagon, a licensed Pennsylvania attorney, is Richard Rieder's cousin. See Stillwagon Decl. [D.E. 113-1] ¶¶ 2–3. Defendants Richard Rieder and his son, Alois Rieder, are residents of Austria and the principal owners of two foreign companies, Watersprings Development ("Watersprings") of Switzerland and Nufin Anstalt ("Nufin") of Liechtenstein. See Alois Rieder Decl. [D.E. 105-16] ¶ 2; Richard Rieder Decl. [D.E. 105-16] ¶ 2; Second Am. Compl. [D.E. 47] ¶ 9. These companies are shareholder owners of defendant Rial, a North Carolina corporation. Second Am. Compl. ¶¶ 3, 10. Rial is the sole shareholder of defendant Innsbrook, a North Carolina limited liability company. See id. ¶¶ 2, 10.

In 1980, Stillwagon began to work for Richard Rieder. Stillwagon Decl. ¶ 1. Although the parties worked together for decades, they dispute the nature of their relationship. Stillwagon claims that Richard Rieder retained him "to generally manage and assist [Rieder] with his business affairs in the United States." Id. To that end, Stillwagon says, he served as president of Rial, managed the finances of various Rieder enterprises, and managed and supervised the development of multiple North Carolina properties, including a residential community and accompanying golf course in Bertie County, North Carolina ("Innsbrook Project"). See id. ¶¶ 4–12. Defendants, on the other hand, claim that Richard Rieder retained Stillwagon to serve as an attorney, not a businessman, and that although Stillwagon "also served in various positions as an officer and board member for Rial and Innsbrook, as well as other companies used to manage investments in the United States, he . . . served continuously as legal counsel for [defendants]." Alois Rieder Decl. ¶¶ 4–6; see Richard Rieder Decl. ¶¶ 4–5, 7–8; Scheffauer Decl. [D.E. 105-16] ¶¶ 4–8; Niederkofler Decl. [D.E. 105-14] ¶¶ 5–9.

2

In 2004, Stillwagon began work on the Innsbrook Project, a residential and golf-course development. Stillwagon Decl. ¶¶ 10–12. Stillwagon alleges that he entered into an oral agreement in which he would be paid 2.5% of the project revenues and a monthly salary. Id. ¶ 12. On February 19, 2008, Stillwagon sent a letter to Wilfried Niederkofler ("Niederkofler") asking for confirmation of his compensation at "2.5% of gross revenues from lot sales" and a monthly salary of $5,000. See Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1 [D.E. 145-1], 74. On January 20, 2009, Niederkofler, acting as defendants' agent, see id. 72–73, sent a letter to Stillwagon in which he confirmed "the verbal agreements" between the Rieders and Stillwagon. Id. 97. According to these agreements, Stillwagon would receive 2.5% for gross sales and a salary of $5,000 per month. Id.

In early August 2009, Niederkofler told Stillwagon that "[his] services were no longer needed for any of the Rieder projects" and suggested that Stillwagon resign. Stillwagon Decl. ¶ 32. On August 27, 2009, Stillwagon sent a letter to Niederkofler informing the Rieders that he wished to leave Rial and Innsbrook. Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1, 99–100. Stillwagon noted the "original agreement" of a 2.5% commission for gross sales and requested a severance payment of $3.25 million or, in the alternative, a lump sum of $1.6 million. Id. On November 9, 2009, the parties entered into a written severance agreement as "a termination and release of that [oral] contract." Id. 107–10. The written agreement called for the defendants to make four annual payments of $300,000 to Stillwagon beginning on April 1, 2010. Id. 107. The defendants failed to make the second payment in April 2011, and Stillwagon filed suit, alleging a breach of the written severance agreement or, in the alternative, a breach of the alleged original oral contract. See Second Am. Compl. ¶¶ 49–61.

On August 29, 2014, this court found the written severance agreement unenforceable as a matter of law and granted defendants' motion for partial summary judgment on count one. See

[D.E. 169]. The court now considers defendants' motion for partial summary judgment on count two, the alleged breach of oral contract claim.

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of showing an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). There is a genuine issue for trial if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88.

North Carolina law governs the oral contract claim. See Stillwagon I, 2013 WL 1180312, at *7. In construing North Carolina law, the court must attempt to predict what the Supreme Court of North Carolina would do if it "were faced with this [case]." Teague v. Bakker, 35 F.3d 978, 991

4

(4th Cir. 1994). In doing so, the court may consider cases from the North Carolina Court of Appeals, treatises, and the practices of other states. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).

To prove breach of contract under North Carolina law, a plaintiff must prove (1) the existence of a valid contract, and (2) breach of the terms of the contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), disc. rev. denied, 360 N.C. 290, 627 S.E.2d 621 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); Jackson v. Carolina Hardwood Co., 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). To be enforceable, a contract requires assent, mutuality, and definite terms. See Horton v. Humble Oil & Ref. Co., 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961). To recover compensatory damages for a breach of contract, a plaintiff "must present evidence with sufficient completeness to permit a reasonable determination of damages." Esteel Co. v. Goodman, 82 N.C. App. 692, 698, 348 S.E.2d 153, 157 (1986), disc. rev. denied, 318 N.C. 693, 351 S.E.2d 745 (1987).

A genuine issue of material fact exists concerning whether a valid oral contract existed between Stillwagon and the defendants. Defendants contend that there was no oral contract because the payment terms were undefined. Defs.' Mem. Supp. Mot. Partial Summ. J. [D.E. 157] 11–12. To have an enforceable contract, "there must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract." O'Grady v. First Union Nat'l Bank, 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978). Price is an essential term. Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners Corp., 206 N.C. App. 278, 283, 697 S.E.2d 468, 472 (2010). As support for their contention that the payment terms were undefined, defendants cite three instances where Stillwagon describes the alleged 2.5% commission as a commission "of gross revenues from lot sales," "of the Project revenues," and "of Project sales

5

revenues." Defs.' Mem. Supp. Mot. Partial Summ. J. 11. Viewing the evidence in the light most favorable to Stillwagon, the court rejects defendants' argument. Niederkofler described the terms as "2.5% for any gross sales of [the Rieder's] projects." Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1, 97. Stillwagon also referred to his commission as "2.5% of gross revenues" and "2.5% of the project." Id. 74, 100. The written severance agreement described the compensation under the oral contract as "2.5% of the project." Id. 107. The court concludes that a reasonable jury could find that the payment term was defined and agreed upon by the parties. Thus, summary judgment is inappropriate on this ground.

Next, the court considers whether a genuine issue of material fact exists concerning a breach of the alleged oral contract. Initially, the court must determine whether the oral contract was a contract of indefinite duration under North Carolina law. A contract of indefinite duration exists where the parties fail to specify a point in time when the contract will terminate. See, e.g., J.M. Smith Corp. v. Matthews, 123 N.C. App. 771, 774, 474 S.E.2d 798, 800–01 (1996). The record shows that Stillwagon and defendants did not specify a time for the oral contract to terminate and, instead, treated it as a terminable-at-will contract. See, e.g., Stillwagon Decl. ¶¶ 10–12, 32–34; Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1, 97, 99–100, 102. Thus, the oral contract was one of indefinite duration.

As a contract of indefinite duration, the oral contract was terminable at will by either party upon reasonable notice to the other party. See, e.g., E. Coast Dev. Corp. v. Alderman-250 Corp., 30 N.C. App. 598, 603–04, 228 S.E.2d 72, 77 (1976); City of Gastonia v. Duke Power Co., 19 N.C. App. 315, 317–18, 199 S.E.2d 27, 29–30 (1973); J.M. Smith Corp., 123 N.C. App. at 774, 474 S.E.2d at 800–01. Here, there is no genuine issue of material fact concerning whether the notice that defendants gave for the termination was reasonable. Niederkofler, defendants' agent, informed

6

Stillwagon in early August 2009 that he should resign. Stillwagon Decl. ¶ 32. In turn, Stillwagon submitted his resignation letter on August 27, 2009, and the parties signed a written severance agreement to terminate their oral contract on November 9, 2009. Id. ¶¶ 32–35, 42. Indeed, Stillwagon states that "[a]fter collaborating and performing their due diligence," the parties reached a severance agreement that terminated the oral contract. Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. [D.E. 166] 4; see Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1, 107. Thus, defendants gave reasonable notice, and the oral contract terminated no later than November 9, 2009. Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1, 107–10; see Citrini v. Goodwin, 68 N.C. App. 391, 397, 315 S.E.2d 354, 359 (1984) (stating that reasonable notice "[u]sually . . . means prior notice" but may include, in some circumstances, immediate termination). Because Stillwagon received the money due under the oral contract through November 9, 2009, there was no breach of the oral contract and defendants are entitled to summary judgment on count two.[1]

In concluding that defendants did not breach the terminable-at-will oral contract, the court acknowledges that the Supreme Court of North Carolina recognized a "narrow exception" to the

---

[1] Stillwagon has not alleged, and the record does not show, the sale of Innsbrook Project lots before the termination of the oral contract for which he did not receive a commission. See Second Am. Disclosures 10 (showing no conveyances of Innsbrook Project deeds between August 2009 and November 2009). Moreover, the fact that the parties entered an unenforceable severance agreement effective November 9, 2009, does not mean that the oral contract was not terminated. Instead, the unenforceable severance agreement highlights why Stillwagon should have disclosed, in writing, to defendants the material conflict of interest that existed concerning the severance agreement, advised defendants to seek independent legal counsel concerning the severance agreement, and obtained written informed consent from defendants before drafting and entering the severance agreement. See Stillwagon II, 2014 WL 4272766, at *7. If Stillwagon had advised defendants appropriately and defendants had retained an independent lawyer to advise them on the oral contract with Stillwagon, defendants would have learned that the oral contract was of indefinite duration and terminable at will and that defendants had no contractual obligation under North Carolina law to pay any more money to Stillwagon under the oral contract. As such, an independent lawyer would have advised defendants that there was no reason grounded in North Carolina law to enter into the severance agreement and to agree to pay Stillwagon $1,200,000.

7

terminable-at-will rule where one party to a contract has not "had a chance to realize a return on their initial outlays." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 533–34 (4th Cir. 1989); Gen. Tire & Rubber Co. v. Distribs., Inc., 253 N.C. 459, 472, 117 S.E. 2d 479, 489 (1960). The Supreme Court of North Carolina and the Fourth Circuit have explained that, where this narrow exception applies, a court must evaluate the reasonableness of a contract's duration by focusing on whether a party "has had a fair opportunity" to recoup expenses outlaid in the performance of the contract. Gen. Tire & Rubber Co., 253 N.C. at 472, 117 S.E.2d at 489; Bartolomeo, 889 F.2d at 533. This inquiry focuses on a number of factors, including the amount of a party's preliminary and promotional expenditures, the length of time a party operated before notice of termination, the prospect of future profits, and the profitability during actual operations. Gen. Tire & Rubber Co., 253 N.C. at 472, 117 S.E.2d at 489. Where a party recoups its investment and makes some profits, that party has had a fair opportunity and, as a matter of law, the contract's duration is reasonable and may be terminated. Bartolomeo, 889 F.2d at 534.

The Supreme Court of North Carolina has not applied this narrow exception to at-will employment relationships. See Kurtzman v. Applied Analytical Indus., 347 N.C. 329, 331–35, 493 S.E.2d 420, 422–24 (1997). The court predicts that the Supreme Court of North Carolina would not apply the narrow exception to the oral contract at issue in count two. Even if it did, however, the oral contract between Stillwagon and defendants had been in effect for a reasonable time and defendants lawfully terminated it. Stillwagon began the Innsbrook Project in 2004. Stillwagon Decl. ¶ 10. There is no evidence that Stillwagon put his own money into the project. Rather, the Rieders and their companies financed the development. See, e.g., Pl.'s Mem. Supp. Mot. Summ. J., Attach. 1, 75–77. Over the course of five years, Stillwagon received approximately $400,000 in salary and commissions from Innsbrook Project sales. Id. 100; Second Am. Disclosures [D.E. 166-1] 3.

8

Stillwagon has identified only one sale that occurred after his termination. See Second Am. Disclosures 10. Considering Stillwagon's absence of incurred expenses in the Innsbrook Project, the five-year duration of the oral contract, his compensation during that time, and the lack of evidence regarding the future profitability of the Innsbrook Project, the defendants reasonably terminated the oral contract no later than November 9, 2009. Moreover, Stillwagon has not alleged a breach of the oral contract before the termination date. Cf. id. 3; Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 2–3. Thus, defendants did not breach the oral contract, and the court grants defendants' motion for partial summary judgment on count two.

Alternatively, even assuming that Stillwagon could prove the existence of the oral contract and its breach, Stillwagon has not raised a genuine issue of material fact concerning compensatory damages. "The burden of proving damages is on the party seeking them," and that party "must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 547–48, 356 S.E.2d 578, 586 (1987); Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 6748518, at *10 (E.D.N.C. Dec. 22, 2011) (unpublished) (collecting cases). This standard "does not require absolute certainty, [but] it requires something more than hypothetical or speculative forecasts." Med. Staffing Network, Inc. v. Ridgway, 194 N.C. App. 649, 660, 670 S.E.2d 321, 330 (2009) (quotation omitted); see Perfecting Serv. Co. v. Prod. Dev. & Sales Co., 259 N.C. 400, 417, 131 S.E.2d 9, 22 (1963) ("Absolute certainty is not required but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." (quotation omitted)). "Any reference to . . . potential offers [for real property] is speculative, and thus cannot establish damages." In re Devotion Assocs., Ltd., 86 F.3d 1149, 1996 WL 265990, at *2 (4th Cir. May 20, 1996) (per curiam) (unpublished table decision). "Whether a party's evidence

9

meets the 'reasonable certainty' standard is a question of law for the court." Ross v. Wash. Mut. Bank, 566 F. Supp. 2d 468, 482 (E.D.N.C. 2008), aff'd, 625 F.3d 808 (4th Cir. 2010).

Stillwagon claims damages of $1,666,256.50 from the alleged breach of the oral contract, based only on the 2.5% commission of sales of Innsbrook Project lots. Second Am. Disclosures 3. He offers as evidence two spreadsheets (of unclear origin) showing the "agreed upon lot prices at the time of his termination, minus . . . the commissions paid to Plaintiff prior to his termination." Id. 3, 5–10. Stillwagon reaches the alleged damages by multiplying the listed sales prices of all Innsbrook Project lots by 2.5% and subtracting the commissions paid to Stillwagon before his termination. Id. 3.

Stillwagon's evidence suffers three flaws, each damaging by itself and cumulatively fatal to his claim for compensatory damages.[2] First, according to Stillwagon's spreadsheets, only 52 of the 399 lots have been sold. Id. 5–7. Of the remaining 347 unsold lots, 199 lots—over half—are not even "reserved." Thus, it is purely speculative that these unsold lots will sell and, if they do, for what price. A spreadsheet listing prices that the sellers hope to gain for the sale of real estate is not reasonably certain evidence of the commission amount Stillwagon would have earned on the actual sales price.

Second, for the 148 properties that are listed as "reserved," Stillwagon has not shown evidence that these reservations are anything more than "potential offers" or that the actual sales price will be the spreadsheet's listed price. Cf. In re Devotion Assocs., Ltd., 1996 WL 265990, at *2 (affirming lower court's dismissal where the plaintiff showed evidence only of a potential offer for real estate that could be rescinded with no penalties); Rogerson v. Duplin Land Dev., Inc., No.

---

[2] The court does not imply that any single flaw is not fatal in and of itself.

10

7:11-CV-164-D, 2013 WL 819196, at *4–5 (E.D.N.C. Mar. 5, 2013) (unpublished) (finding an agreement to agree concerning the sale of land void for indefiniteness).

Third, there are several examples where the list price differed significantly from the actual sales price and one case of inconsistency between the two spreadsheets. For example, lot 377 has a list price of $269,000 but its actual sales price was listed at $249,000. See Second Am. Disclosures 7, 10. Lot 382 was listed at $159,000 but its actual sales price was $79,000. Id. Lot 75 was listed at $279,000 and described as "not sold," but the second spreadsheet shows it selling for $200,000. Id. 5, 10. Although the latter inconsistency, in isolation, might appear to buttress Stillwagon's claim because it shows a purportedly unsold unit having been sold, these inconsistencies, viewed in the aggregate, undercut the reliability and completeness of this evidence and further demonstrate how a jury could not determine reasonably certain damages based on these spreadsheets.

Stillwagon responds that his evidence is sufficient because he has provided "a specific damages total [and] the calculations upon which that total is based," supported by two spreadsheets. Pl.'s Mem. Opp'n Defs.' Mot. Partial Summ. J. 8. This argument ignores that it is not the calculation method that is unreasonably speculative. Rather, it is the premise underlying the data that is speculative: that all the remaining lots, reserved or not, will sell at all, much less sell for the listed price. Stillwagon simply has not provided evidence supporting this underlying premise. For example, Stillwagon has not offered any expert testimony, economic and financial data, market surveys and analyses, or business records of other similarly-situated residential and golf course developments in northeastern North Carolina that might create a reasonable certainty of his alleged compensatory damages. Cf. Ross, 566 F. Supp. 2d at 482. Accordingly, as a matter of law, Stillwagon's evidence of compensatory damages is not sufficiently specific or complete. Evidence based on hypothetical and speculative future sales of real estate does not create a genuine issue of

11

material fact concerning compensatory damages. See, e.g., In re Devotion Assocs., Ltd., 1996 WL 265990, at *2–3; Ritch Realtors, Inc. v. Kinard, 45 N.C. App. 545, 546–47, 263 S.E.2d 38, 39 (vacating the trial court's summary judgment order awarding commission damages to the plaintiff because the plaintiff offered no evidence of "an able, willing buyer to purchase the property for the specified price"), disc. rev. denied, 300 N.C. 375, 267 S.E.2d 677 (1980).[3]

III.

Next, the court considers plaintiff's motion for reconsideration [D.E. 170] of the court's August 29, 2014 order granting summary judgment to defendants on count one of plaintiff's complaint, and plaintiff's motion to amend [D.E. 172] the August 29, 2014 order to certify the issue for interlocutory appeal under 28 U.S.C. § 1292.

A.

A party may move for reconsideration under Federal Rule of Civil Procedure 59(e). A district court may grant a Rule 59 motion "in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007) (quotation omitted); see Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005); Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002); Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); Collison v. Int'l Chem. Workers Union, Local 217, 34 F.3d 233, 236 (4th

---

[3] The court recognizes that a party who proves a breach of contract but fails to prove compensatory damages may be entitled to recover nominal damages. See, e.g., Pharmanetics, Inc. v. Aventis Pharm., Inc., No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *17 (E.D.N.C. May 4, 2005) (unpublished) (quoting United States ex rel. S&D Land Clearing v. D'Elegance Mgmt., 2000 U.S. App. LEXIS 16173, at *18 (4th Cir. May 3, 2000) (per curiam) (unpublished); Robbins v. C.W. Myers Trading Post, Inc., 251 N.C. 663, 666, 111 S.E.2d 884, 886 (1960).

12

Cir. 1994). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (quotation omitted). "[M]ere disagreement does not support a Rule 59(e) motion." Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993).

Stillwagon primarily bases his motion for reconsideration on the availability of new evidence, particularly the Niederkofler deposition. Pl.'s Mem. Supp. Mot. Reconsideration [D.E. 171] 2. Reconsideration on the basis of new evidence requires that Stillwagon "produce a legitimate justification for not presenting the evidence during the earlier proceeding." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 197 (4th Cir. 2006). Stillwagon's motion fails for at least two reasons. First, Stillwagon does not adequately justify why he previously did not present this evidence to the court. He concedes that almost three months passed between the end of discovery, by which time the "new" evidence was in his possession, and this court's entry of judgment on count one. See Pl.'s Mem. Supp. Mot. Reconsideration 2. Stillwagon could have moved to supplement his response to defendants' motion for summary judgment on count one based on this evidence, but he failed to do so. The court will not grant a motion to reconsider in these circumstances. Cf. Ingle, 439 F.3d at 198 (affirming the denial of a Rule 59 motion based on new evidence where the evidence was available to the plaintiff before the district court ruled).

Second, even assuming Stillwagon adequately justified his failure to present the evidence earlier, the evidence does not warrant reconsideration. The court has reviewed Stillwagon's attachments, including the Niederkofler deposition upon which Stillwagon primarily relies, and finds Stillwagon's arguments for reconsideration unpersuasive. In its August 29, 2014 order, this court held that the written severance agreement was unenforceable as a matter of law because no rational jury could find that Stillwagon, as defendants' attorney, drafted and entered into the severance agreement with "the most absolute" or "most perfect" good faith. See Stillwagon II, 2014 WL

13

4272766, at *6–8. In reaching this conclusion, the court considered, inter alia, the Pennsylvania and North Carolina Rules of Professional Conduct as indicia of good faith and concluded that no rational jury could find that Stillwagon complied with the Rules, thereby bolstering the conclusion that Stillwagon could not show the requisite good faith. Id. at *7–8. Niederkofler's deposition testimony does not alter the court's conclusion that Stillwagon failed to create a genuine issue of material fact concerning whether he acted with "the most absolute" or "most perfect" good faith when drafting and entering into the severance agreement without advising defendants, in writing, to obtain independent legal counsel or obtaining written informed consent from defendants. Stillwagon's single assertion that addresses this topic comes from his own declaration, but the court already considered and rejected Stillwagon's reliance on this evidence. Pl.'s Mem. Supp. Mot. Reconsideration 7; Stillwagon II, 2014 WL 4272766, at *9.

Stillwagon also contends that the court made a clear error of law, and makes two arguments: (1) the determination of Stillwagon's good faith is a question only for the jury; and (2) the presence of conflicting affidavits makes summary judgment improper. Pl.'s Mem. Supp. Mot. Reconsideration 7–10.

The court already considered and rejected the second argument in its August 29, 2014 order. See Stillwagon II, 2014 WL 4272766, at *8–9. There was no error, much less a clear error.

As for the determination of good faith, the Supreme Court of North Carolina has observed that "[i]f there has been profit made for himself by counsel out of the relationship contrary to the duty that his knowledge and his skill must be used solely for the benefit of that client, the court will always set aside the transaction . . . ." Mebane v. Broadnax, 183 N.C. 333, 111 S.E. 627, 629 (1922) (emphasis added). The attorney must show "the most absolute good faith . . . towards his client." Id., 111 S.E.2d at 629. In Bledsole v. Johnson, 357 N.C. 133, 579 S.E.2d 379 (2003), which

14

Stillwagon cites for the proposition that only a jury may decide questions of good faith, the Supreme Court of North Carolina considered an appeal from a trial court's denial of defendant's motion for trial de novo and its imposition of sanctions on the defendant for failing to "participate in a good faith and meaningful manner" in arbitration proceedings. Id. at 136–39, 579 S.E.2d at 380–82. The Bledsole court noted that "[w]hether a party has acted in good faith is a question of fact for the trier of fact, but the standard by which the party's conduct is to be measured is one of law." Id. at 138, 579 S.E.2d at 382 (citation omitted). The court then concluded that "the evidence was insufficient to support [the trial court's] finding that defendant did not participate in a good faith and meaningful manner in the arbitration proceeding" and reversed the trial court's decision. Id. at 139, 141, 579 S.E.2d at 382–83.

Unlike the good faith participation in an arbitration proceeding at issue in Bledsole, the issue concerning the enforceability of the severance agreement focuses on whether a genuine issue of material fact exists about Stillwagon's adherence to the legal standard of "the most absolute good faith" towards defendants in his conduct as their attorney. Mebane, 111 S.E. at 629. As a matter of law, and even viewing the evidence in the light most favorable to Stillwagon, Stillwagon did not meet the governing standard when drafting and entering into the severance agreement. See Stillwagon II, 2014 WL 4272766, at *7–9 ; cf. Bledsole, 357 N.C. at 139, 579 S.E.2d at 382; Mebane, 111 S.E. at 629 (noting that the trial court "might well have" decided the key issue but instead submitted it to the jury); Thomas Jefferson Univ. v. Wapner, 2006 PA Super 156, 903 A.2d 565, 575 (2006) (noting that the issue of good faith was "properly a question for the jury because it was [not] established as a matter of law") (emphasis added).

Stillwagon has not met his burden under Rule 59(e). Thus, the court denies Stillwagon's motion for reconsideration.

15

B.

Stillwagon has moved to amend the court's order on motion for partial summary judgment concerning count one in order to allow an interlocutory appeal. A district court may certify an issue for interlocutory appeal when the judge is "of the opinion that [an] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The movant under section 1292(b) must satisfy both prongs. KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., 250 B.R. 74, 79 (E.D.Va. 2000). The movant also must show "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978). A district court has broad "discretion to decline to certify an interlocutory appeal if exceptional circumstances are absent." Manion v. Spectrum Healthcare Res., 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013). After all, "piecemeal review of decisions that are but steps toward final judgment on the merits are to be avoided, because they can be effectively and more efficiently reviewed together in one appeal from the final judgment." James v. Jacobson, 6 F.3d 233, 237 (4th Cir. 1993).

In a motion for leave to appeal an interlocutory order under section 1292(b), the movant must state "the precise nature of the controlling question of law involved." Fannin v. CSX Transp., Inc., No. 88-8120, 1989 WL 42583, at *2 (4th Cir. Apr. 26, 1989) (per curiam) (unpublished). The Fourth Circuit has construed "controlling question of law" to mean "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." Id. at *5; see Univ. of Va. Patent Found. v. Gen. Elec. Co., 792 F. Supp. 2d 904, 910 (W.D. Va. 2011). Here, Stillwagon has failed to prove that the legal issues resolved in

16

this court's order of August 29, 2014, are "completely dispositive of the litigation." Fannin, 1989 WL 42583, at *5. Thus, the motion fails.

Alternatively, an immediate appeal from the August 29, 2014 order will not materially advance the ultimate termination of the litigation. Although the court has now ruled on defendants' motions for summary judgment on plaintiff's breach of contract claims, defendants continue to assert numerous counterclaims against Stillwagon. See Defs.' Second Am. Ans. [D.E. 96]. These counterclaims do not depend on Stillwagon's breach of contract claims, and Stillwagon's motion for summary judgment on these counterclaims remains pending [D.E. 144]. Furthermore, Stillwagon's case does not present exceptional circumstances. Cf. Coopers & Lybrand, 437 U.S. at 474–75; Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc., 317 F.2d 741, 743 (4th Cir. 1963) (noting that the use of interlocutory orders was meant to be confined to "exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases" (quotation omitted)). Accordingly, the court denies Stillwagon's motion to amend the August 29, 2014 order in order to allow an interlocutory appeal.

IV.

In sum, the court GRANTS defendants' motion for partial summary judgment on count two of plaintiff's second amended complaint [D.E. 156]. The court also GRANTS defendants' motion to file a supplement to their response to plaintiff's motion for summary judgment [D.E. 162], DENIES plaintiff's motion for reconsideration [D.E. 170], and DENIES plaintiff's motion to amend the order on motion for partial summary judgment on count one [D.E. 172]. Finally, the court orders the parties to participate in court-hosted mediation with Magistrate Judge James E. Gates.

17

SO ORDERED. This 12 day of November 2014.

                                                    JAMES C. DEVER III
                                                    Chief United States District Judge